UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **LUISA LUPI AND EVA LUPI,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **TIMOTHY DIVEN, JAIME VON** | § | |
| **SELTMANN, ROCKY REEVES,** | § | **Case No. 1:20-CV-207-RP** |
| **MICHAEL GUETZKE, LAUREN** | § | |
| **VILLARREAL, JERRY FLOYD, EWA** | § | |
| **WEGNER, ALAN SCHWETTMANN,** | § | |
| **JOSHUA VISI, MICHAEL LEWIS** | § | |
| **KING, BRIAN ROBINSON, THOMAS** | § | |
| **HORN, JOSEPH LUCAS, ELIZABETH** | § | |
| **GLIDDEN, MCKENNA KUHR,** | § | |
| **TIMOTHY HEDRICK, STEVE WHITE,** | § | |
| **AND CITY OF AUSTIN,** | § | |
| *Defendants* | § | |

ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
   **UNITED STATES DISTRICT JUDGE**

Before the Court are Plaintiffs' Motion to Compel Defendants Elizabeth Glidden and McKenna Kuhr to Comply with Federal Pleading Requirements (Dkt. 43);[1] Defendants' Rule 12(b)(1) Motion to Dismiss (Dkt. 44); Defendant City of Austin's Motion to Dismiss under Rule 12(b)(6) (Dkt. 45); Individually Named City Defendants' 12(b)(6) Motion to Dismiss (Dkt. 46); and the parties' various response and reply briefs. On September 10, 2020, the District Court referred the motions to the undersigned for resolution and for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

---

[1] *Pro se* Defendants Glidden and Kuhr's Answers comply with the Federal Rules of Civil Procedure. Accordingly, Plaintiffs' Motion to Compel (Dkt. 43) is **DENIED**.

## I.   General Background

### A.  Facts

In 2011, Luisa Lupi and her sister Eva Lupi ("Plaintiffs") purchased a home at 6837 Auckland Drive in Austin, Texas. Plaintiffs allege that since then, they have "lawfully exercised their constitutional rights to own pets and quietly live with their pets on their property." Plaintiffs' First Amended Complaint, Dkt. 33 ¶ 2. Plaintiffs allege that Luisa suffers from dyslexia and a mild speech impediment, but does not have a mental illness or intellectual disability. *Id.* ¶ 12.

In September 2017, Defendant Elizabeth Glidden moved into the house next door to Plaintiffs. Plaintiffs allege that, shortly  thereafter, Glidden began "willfully and intentionally harassing" Plaintiffs by "making false, denigrating statements" to the Austin Police Department ("APD") and Texas Adult Protective Services ("APS"). Specifically, Plaintiffs contend that Glidden told APD and APS that "Luisa was unable to care for herself because of her mental disabilities, and that she was intellectually challenged," and that Glidden reached over Plaintiffs' fence to spray their backyard with Roundup. Dkt. 33 ¶ 74. Plaintiffs further allege that Glidden conspired with Defendant McKenna Kuhr, another woman in their neighborhood "to remove Luisa from her property." *Id.* ¶ 75

Plaintiffs allege that on March 30, 2018, Kuhr called APD to report that several of Plaintiffs' neighbors had contacted her "about concerns for Luisa, but they wished to remain anonymous." *Id.* Plaintiffs allege that Kuhr told APD that Eva had moved back to California and abandoned Luisa. Kuhr told APD that Luisa's trash had not been seen on the curb in months, she believed Luisa was living in unsanitary conditions and not eating properly, and she described "a foul odor coming from inside the house." *Id.*

In response to Kuhr's call, APD Officers Lauren Villarreal and Michael Guetzke drove to Plaintiffs' house that same day to perform a "well-check" on Luisa. *Id.* ¶ 78. Villarreal stated in

her police report that she "smelled a strong odor of urine when Luisa opened the door and observed Luisa to be extremely frail and thin with sunken cheeks and very thin hair." *Id.* ¶ 80. Villarreal also reported that "Luisa's clothing appeared too large for her and had a strong smell of being soiled, and her pants were covered in animal hair." *Id.* Villarreal further noted that she saw lice in Luisa's hair. Immediately after the well-check, Villarreal contacted APS and was told that an APS officer would check on Luisa within 24 hours. *Id.* ¶ 86.

Villarreal also met with Glidden, who told Villareal that she "was concerned for Luisa and was planning to file a report with APS because she believed that no one was living with Luisa and she was unable to care for herself because of her disabilities." *Id.* ¶ 91. Glidden further told Villareal that she was concerned about the welfare of Luisa's dogs because one dog had a large sore on its face and another dog appeared to be "skin and bones." *Id.* After the meeting, Villarreal noted in her report that that she was going to request a "Mental Health Unit follow-up" on Luisa. *Id.* ¶ 92.

Plaintiffs dispute Villarreal's report and Glidden's allegations against Luisa. Specifically, Plaintiffs contend that Luisa's clothing was clean and did not smell, and that she was wearing loose clothing at home to be comfortable. Dkt. 6 at 5. With respect to Luisa's weight, Plaintiffs state that Luisa has always been slim and weighed a healthy 110 pounds. *Id.* Plaintiffs take special exception to Villarreal's observation that she could see lice in Luisa's hair, and contend that is "medically impossible" because "the detection of lice requires careful close-up work even by trained doctors, sometimes involving a microscope." *Id.* Plaintiffs also contend that they "went above and beyond to provide love and care for their pets." Dkt. 33 ¶ 61.

On April 6, 2018, APD's Crisis Intervention Team ("CIT") assigned Luisa's case to Officer Jamie Von Seltmann. After reviewing Villarreal and Guetzke's reports and meeting with other officers involved in the case, Von Seltmann determined that Luisa's case should be reported to

APS and CIT for a follow-up "because of Luisa's physical condition." *Id.* at ¶ 99. Von Seltmann coordinated with APS, APD's Animal Cruelty Unit, the Austin Code Enforcement Department, and the Austin-Travis County EMS Community Health Paramedic Program ("EMS"), and scheduled a follow-up mental health visit on Luisa to be performed April 17, 2018. *Id.* ¶¶ 101-02.

As planned, officers arrived at Luisa's home on April 17, 2018, at 9 a.m. After the officers knocked on her door, Luisa opened the door and stepped out onto her front porch. Von Seltmann and Animal Cruelty Unit Officer Timothy Diven reported that Luisa was wearing clothes "that appeared to be soiled and too large for her slender frame," had issues with her speech and "appeared to be mentally challenged." *Id.* ¶ 115. The officers also reported smelling urine and that they could "see lice on Luisa." *Id.* Diven also reported noticing "a strong order of ammonia, urine and feces emanating from behind the front door." *Id.* ¶ 113. The officers then decided to detain Luisa for a mental evaluation under Texas Health and Safety Code § 573.001. Dkt. 6-2 at Exh. G.

Plaintiffs allege that after Luisa attempted to go back into her house, Von Seltmann and APS Officer Rocky Reeves "grabbed Luisa by the wrists and began pulling her off the porch, down the driveway, and toward the street." Dkt. 33 ¶ 116. Plaintiffs allege that the officers did not show her a warrant "authorizing the seizure of her person or a warrant to enter and search her home." *Id.* ¶ 127. CIT officers then escorted Luisa to an EMS van and took her to Seton Medical Center for a mental health evaluation. Once Luisa arrived at the hospital, Plaintiffs allege that she was "forced to remain in a hot and poorly ventilated room without food or water for several hours" and pressured to undergo medical tests *Id.* ¶ 130. Plaintiffs allege that Luisa passed a "Mini-Mental Health Status Exam" at the hospital and that a psychologist opined that "she did not appear to be a psychiatric patient." *Id.* ¶ 136. Hospital personnel discharged Luisa at 4:51 p.m. the same day.

Plaintiffs allege that before Luisa was taken to the hospital, she told the officers "not to go into her house" and that she "was not consenting to a search of her house." *Id.* ¶ 120. Plaintiffs allege that the officers proceeded to search their home "without warrants or consent." *Id.* ¶ 160. Officer Diven described Plaintiffs' house "as a hoarder house," with "boxes and boxes of items and trash piled from floor to ceiling covering at least 80-90% of the space in the house." Dkt. 6-2 at Exh. G. He further stated that there was "dust, dirt and debris over everything." *Id.*

Diven discovered Plaintiffs' four dogs inside the house and noted that they were missing large patches of fur and appeared to be in bad health, unkempt and very thin. *Id.* Based on the condition of the house, the dogs' physical appearances, and "the horrific living conditions," Diven concluded that the dogs were "cruelly treated." Dkt. 33 ¶ 154. Accordingly, Diven seized the four dogs and transported them to the Austin Animal Center "where they would be cared for." *Id.* In addition to their dogs, Plaintiffs allege that the officers took several pieces of antique jewelry worth $220,000.

After the dogs arrived at the Austin Animal Center, Dr. Rachel Hays performed a cruelty examination on each dog. Dr. Hays reported that the dogs had fleas, skin conditions, tumors, tapeworms, dirty and matted coats, overgrown toenails, and mange. *Id.* ¶¶ 163, 169. She further found that two of the dogs were underweight, one was "borderline emaciated," and another had what appeared to be a urinary tract infection. *Id.* ¶ 166. Plaintiffs dispute Dr. Hays' findings and argue that she deviated from "accepted veterinary standards" in her evaluation of the dogs. *Id.*

While Plaintiffs allege that officers did not show Luisa a seizure warrant before seizing Luisa or the four dogs, Plaintiffs' Amended Complaint acknowledges that Diven did in fact obtain a Warrant for Seizure of Animals at 2:20 p.m. on April 17, 2018, which was executed at 3 p.m. the same day. *Id.* ¶ 179. Plaintiffs also acknowledge that Luisa was served with the Warrant and Notice of Hearing at 3:30 p.m. the same day, while she was still at the hospital. *Id.* ¶ 180.

On April 24, 2018, Travis County Justice of the Peace Judge Nicholas Chu held a hearing, pursuant to Texas Health and Safety Code §§ 821.022(b) and 821.023, "to determine ownership of the animals, whether the animals were cruelly treated . . . and to determine disposition of the [dogs]." Dkt. 26-1 at 1. Plaintiffs were represented at the hearing by attorney Will Hale. Dkt. 33 ¶ 183. After hearing the evidence, Judge Chu found that Luisa had "cruelly treated the animals . . . as defined by Tex. Health & Safety Code § 821.021, by torturing them and by unreasonably depriving the animals of necessary food, care and shelter." Dkt. 26-1 at 2. Judge Chu then ordered that "Luisa Monica Lupi and all other owners are hereby divested of ownership of the animals" and turned them over to the Austin Animal Center. *Id.* at 3.

Plaintiffs appealed, and Travis County Court at Law Judge David Phillips held a de novo appeal hearing on June 13, 2018. Dkt. 26-2 at 1. After the hearing, Judge Phillips issued an order finding that Luisa and Eva were the owners of the four dogs and had treated the dogs cruelly by unreasonably depriving them of necessary food, care, and shelter. Judge Phillips affirmed Judge Chu's Order divesting Plaintiffs' ownership of the dogs and turning the dogs over to the Austin Animal Center. *Id.* at 2-3.

On February 12, 2020, Plaintiffs allege that they received a City Code violation notice for "accumulation of rubbish or garbage." Dkt. 33 ¶ 203. Plaintiffs allege because of "the ongoing harassment and their inability to find out anything about their dogs," they temporarily moved out of their home on February 20, 2020. *Id.* ¶ 204.

### B. Plaintiffs' Lawsuit

On February 25, 2020, Plaintiffs filed this civil rights lawsuit, pursuant to 42 U.S.C. § 1983, against the City of Austin ("City"); APD Officers Diven, Von Seltmann, Guetzke, Villarreal, Rocky Reeves, Jerry Floyd, Ewa Wegner, Alan Schwettmann, Joshua Visi, Michael King, and Brian Robinson; Code Enforcement Officers Thomas Horn and Joseph Lucas; and EMS Officers

Timothy Hedrick and Steve White (collectively, the "Individual City Defendants"); and Glidden and Kuhr.[2] In their Amended Complaint, Plaintiffs allege that the City Defendants' search of their property, seizure of their dogs and jewelry, and emergency detention of Luisa violated their Fourth and Fourteenth Amendment rights. Plaintiffs further allege that the City's inadequate policies, training, supervision, and investigation and discipline constituted deliberate indifference to the deprivation of Plaintiffs' constitutional rights. Plaintiffs also contend that Glidden and Kuhr conspired with the City Defendants to violate their constitutional rights. Plaintiffs allege that the City had "unwritten, unconstitutional customs that police officers enjoyed unconstitutionally unfettered discretion" to ignore the requirements for emergency detention under Texas Health and Safety Code § 573.001, and to conduct warrantless searches and seizures. Dkt. 33 ¶ 208. Finally, Plaintiffs allege that the City discriminated against Luisa because of a perceived mental disability, in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Plaintiffs seek declaratory and injunctive relief and $10 million in monetary damages.[3]

On April 3, 2020, the District Court denied Plaintiffs' motion for preliminary injunction seeking an order to "immediately release Plaintiffs' dogs and stolen jewelry items." Dkt. 41 at 14. The District Court determined that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine to issue a preliminary injunction ordering the return of Plaintiffs' dogs. *Id.* at 12. The District Court also found that the Plaintiffs were not entitled to a preliminary injunction regarding the allegedly stolen jewelry because they had failed to demonstrate irreparable harm. *Id.* at 14.

---

[2] Plaintiffs' Original Complaint also named Travis County as a defendant. However, on March 26, 2020, the County was terminated, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Dkt. 25.

[3] Plaintiffs also have filed two related civil rights lawsuits based on the same underlying events, which are currently pending before the District Court. *See Lupi v. Cox*, 1:20-CV-00712-RP; *Lupi v. Cox*, 1:20-CV-00713-RP.

The City and the Individual City Defendants[4] move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. Alternatively, the City and Individual City Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. The Court makes the following recommendations.

## II.    Legal Standards

The Court considers in turn Defendants' arguments under Rule 12(b)(1) and Rule 12(b)(6).

### A.  Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction and may exercise only such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* In ruling on

---

[4] Individual Defendants Glidden and Kuhr have not filed any motions to dismiss as of the date of this Report and Recommendation.

a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

## B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.    Defendants' Rule 12(b)(1) Motion to Dismiss

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161.

Defendants argue that all of Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.[5] At its core, "the *Rooker-Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017). The doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). In addition to the precise claims presented to the state court, the *Rooker-Feldman* doctrine "prohibits federal court review of claims that are 'inextricably intertwined' with a state court decision." *Burciaga,* 871 F.3d at 384-85 (quoting *Feldman*, 460 U.S. at 486-87). Thus, litigants may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast as civil rights suits. As the Fifth Circuit has explained:

> Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court.

*Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994). The doctrine, however, "does not prohibit a plaintiff from presenting some independent claim, albeit one that denies a legal

---

[5] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

conclusion that a state court has reached in a case to which he was a party." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (quoting *Exxon Mobil*, 544 U.S. at 284). In these circumstances, state law preclusion principles control. *Id.*

Most of Plaintiffs' claims focus on the alleged illegality of Defendants' search and seizure of their dogs, the seizure warrant, and constitutional errors that occurred before and during the hearing before the state court. Because Plaintiffs' constitutional claims are "inextricably intertwined" with the state court judgment and proceedings regarding the seizure of the dogs, those claims are barred by the *Rooker-Feldman* doctrine.[6] *See Liedtke*, 18 F.3d at 318 (holding that court lacked jurisdiction over attorney's civil rights action contending disbarment in disciplinary proceedings violated due process rights, where civil rights action was inextricably intertwined with state court judgment); *Spencer v. Wilson*, No. CV 4:18-4563, 2020 WL 822096, at *5 (S.D. Tex. Feb. 18, 2020) (holding that plaintiffs' due process and unconstitutional search and seizure claims arising from seizure of their cats under § 821.022(a) were barred by *Rooker-Feldman* because plaintiffs attempted to attack state court judgment seizing cats), *appeal dismissed pursuant to appellants' motion*, 2020 WL 5525159 (5th Cir. June 11, 2020); *Paselk v. Texas*, No. 4:13-CV-97, 2013 WL 6187005, at *8 (E.D. Tex. Nov. 26, 2013) (holding that plaintiff's civil rights suit was barred under *Rooker-Feldman* where all claims were related to state court proceedings seizing animals under § 821.022(a)); *Chambers v. SPCA of Texas*, No. 3:06-CV-1957-K, 2007 WL 9712190, at *5 (N.D. Tex. June 21, 2007) (holding that court lacked jurisdiction under *Rooker-Feldman* to review

---

[6] Plaintiffs attempt to argue that the *Rooker-Feldman* doctrine should not preclude Eva's claims attacking the seizure of the dogs because she was not at the hearing. However, both the Justice of the Peace and County Court at Law Orders state that "Luisa Monica Lupi and *all other owners* are hereby divested of ownership of the animals." Dkt. 26-1 at 3; Dkt. 26-2 at 3. In addition, the County Court at Law Judge specifically stated that Luisa and "Eva Lupi" were "the owners" of the dogs, and were both guilty of cruelly treating the dogs, as defined in the Texas Health & Safety Code § 821.021. Accordingly, Plaintiffs' argument is without merit.

plaintiff's constitutional claims related to seizure order divesting her of ownership of 121 dogs and 1 cat), *report and recommendation adopted*, 2007 WL 9712191 (N.D. Tex. July 9, 2007).

Even if their civil rights were violated by the state court proceedings, Plaintiffs may not challenge the state court judgment against them in this Court. *Liedtke*, 18 F.3d at 318. Any such alleged errors in the state court proceedings would have to be reviewed and corrected by the appropriate state appellate court. *Id.* Plaintiffs' recourse in federal court is limited solely to an application for a writ of certiorari to the United States Supreme Court. *Id.* Accordingly, the Court does not have jurisdiction to review Plaintiffs' Fourth and Fourteenth Amendment claims related to the animal seizure warrant, the state court's animal seizure order, and the state court proceedings, and these claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

*Rooker-Feldman*, however, does not prohibit this Court from reviewing independent claims unrelated to the animal seizure order. *See Truong*, 717 F.3d at 383. The Court has subject matter jurisdiction to review Plaintiffs' claims that (1) the individual officers violated Luisa's Fourth Amendment rights by detaining her for a mental health assessment without a warrant, and by allegedly taking Plaintiffs' antique jewelry; (2) the individual officers violated Plaintiffs' substantive due process rights under the Fourteenth Amendment by arbitrarily and wantonly harassing them with false code violations; (3) Defendants participated in a conspiracy under § 1983 to deprive Plaintiffs of their constitutional rights; (4) the City had unconstitutional policies and customs with regard to training, supervision, investigation, or discipline in seizing citizens and property without a warrant, which caused the violation of Luisa's constitutional rights; and (5) the City discriminated against Luisa because of a perceived mental disability in violation of the ADA. The Court evaluates these claims under Rule 12(b)(6).

## IV.    Individual City Defendants' Motion to Dismiss

The Individual City Defendants argue that they are entitled to qualified immunity as to all of Plaintiffs' claims because Plaintiffs have failed to allege a violation of a constitutional right. Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Petzold v. Rostollan*, 946 F.3d 242, 255 (5th Cir. 2019). "Qualified immunity shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). An official who violates a federal right still is entitled to qualified immunity if his or her actions were objectively reasonable. *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). Therefore, "qualified immunity represents the norm." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).

Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). To rebut the qualified immunity defense, a plaintiff must show that (1) the allegations make out a violation, and (2) the violation was "clearly established" at the time of the defendant's conduct. *Id.* To do so, the plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). At bottom, a plaintiff must show that "no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

In determining whether a defendant is entitled to qualified immunity, the court first asks whether the facts, taken in the light most favorable to the party asserting the injury, show that the defendant's conduct violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

If so, the court next determines whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

The qualified immunity analysis "is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017). "Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Id.*; *see also Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019) (en banc) (noting that the only facts relevant to the qualified immunity inquiry are "what the officers knew at the time of their challenged conduct") (quoting *Hernandez*, 137 S. Ct. at 2007); *Brown*, 623 F.3d at 253 ("An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight."). A defendant is immune if the violation is not objectively obvious, or officials of reasonable competence could disagree on the issue. *Malley*, 475 U.S. at 341.

### A. Luisa's Detention

Plaintiffs allege that Officers Von Seltmann, Reeves, Hedrick and White violated Luisa's Fourth Amendment rights by seizing and detaining her for an emergency mental health evaluation under Texas Health and Safety Code § 573.001 without a warrant or probable cause.[7]

---

[7] Although Plaintiffs appear to bring this claim against all of the Individual City Defendants in this case, Plaintiffs' factual allegations demonstrate that only Officers Von Seltmann, Reeves, Hedrick and White were involved in Luisa's seizure. Accordingly, this claim should be dismissed with regard to all other Individual City Defendants.

### 1.   Texas Health and Safety Code Section 573.001

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend IV. A Fourth Amendment seizure is reasonable only if it is supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979). "The probable cause standard applies in the context of a seizure of the mentally ill." *Cantrell v. City of Murphy*, 666 F.3d 911, 923 n.8 (5th Cir. 2012).

Under § 573.001(a), an officer has probable cause to detain a person for an emergency psychiatric evaluation if "(1) the officer has reason to believe and does believe that a person is mentally ill and because of that illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained; and (2) believes that there is not sufficient time to obtain a warrant before taking the person into custody." *Id.* at 923. The statute defines mental illness as an illness, disease, or condition, other than epilepsy, senility, alcoholism, or mental deficiency, that (1) substantially impairs a person's thought, perception of reality, emotional process, or judgment; or (2) grossly impairs behavior as demonstrated by recent disturbed behavior. TEX. HEALTH & SAFETY CODE § 571.003(14).

A "substantial risk" of serious harm to the person or others may be demonstrated by "(1) the person's behavior, or (2) evidence of severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty." *Rich v. Palko*, 920 F.3d 288, 295 (5th Cir.) (quoting TEX. HEALTH & SAFETY CODE § 573.001(b)), *cert. denied*, 140 S. Ct. 388 (2019). An officer may base her belief that the person meets the criteria for apprehension on either "a representation of a credible person," or "the conduct of the apprehended person or the circumstances under which the apprehended person is found." TEX. HEALTH & SAFETY CODE § 573.001(c)(1)-(2). An officer who detains a person under those provisions "shall immediately"

take the individual to "the nearest appropriate inpatient mental health facility" or an otherwise designated mental health or emergency facility. *Id.* § 573.001(d)(1)(A)-(B).

The Fifth Circuit has held that police officers had probable cause to detain individuals for mental health assessments under § 573.001 where the evidence showed that the individual was contemplating suicide, or there was a substantial risk of harm to others. *See Rich*, 920 F.3d at 295-96 (finding that police officers had probable cause to detain mentally ill plaintiff who was experiencing psychiatric episode and had threatened staff members and other children in group home); *Cantrell*, 666 F.3d at 923 (concluding that officers had probable cause to detain woman making suicidal statements after discovering her young child had died accidentally); *Sullivan v. Cnty. of Hunt*, 106 F. App'x 215, 218 (5th Cir. 2004) (finding that officers had probable cause to detain plaintiff psychiatrist said "was a suicide risk"); *Martinez v. Smith*, 200 F.3d 816, 1999 WL 1095667, at *1-2 (5th Cir. Nov. 4, 1999) (per curiam) (finding probable cause to detain individual who had told acquaintance she was suicidal).

### 2.  Lack of Probable Cause

Plaintiffs argue that the Individual City Defendants have failed to establish that the Officers had probable cause to detain Luisa because she was not mentally ill, there was not a substantial risk of harm to herself or others, and there was sufficient time to obtain a warrant before taking her into custody. The undisputed facts available to the Officers at the time of the seizure could have caused a reasonable officer to believe that Luisa was mentally ill, based on the neighbor's complaints and the Officers' own observations of Luisa and the unsanitary condition of Plaintiffs' house. Nonetheless, the Individual City Defendants have failed to identify any evidence showing that there was a substantial risk of serious harm to Luisa or other individuals. As Plaintiffs point out, there is no evidence in the record that at the time of Luisa's seizure, she "was doing or saying anything that posed a substantial risk of serious harm to herself or others." Dkt. 65 at 10. Thus, the

Individual City Defendants have failed to meet the first factor for legal detention under § 573.001(a)(1).

The Individual City Defendants also fail to demonstrate the second factor: that the officer believed "that there is not sufficient time to obtain a warrant before taking the person into custody." TEX. HEALTH & SAFETY CODE § 573.001(a)(2). Plaintiffs emphasize that Officer Von Seltmann stated in her report that, before she was detained, Luisa "was not an imminent threat to herself or others." Dkt. 6-2 at 22. Plaintiffs argue that the Individual City Defendants have identified no evidence supporting a reasonable belief that there was not sufficient time to obtain a warrant before taking Luisa into custody. The Individual City Defendants appear to concede the point by wholly failing to respond to this argument. Accordingly, the Individual City Defendants have failed to demonstrate that Officers Von Seltmann, Reeves, Hedrick and White had probable cause under § 572.001(a)(2) to detain Luisa. Therefore, Officers Von Seltmann, Reeves, Hedrick and White are not entitled to qualified immunity with regard to this claim at this time.[8]

### B. Alleged Seizure of Jewelry

Plaintiffs' Amended Complaint further alleges that the Individual City Defendants violated their Fourth Amendment rights by taking $220,000 in antique jewelry from Plaintiffs' house during the alleged illegal search. Dkt. 33 ¶ 267. Plaintiffs have failed to plead any facts to support this allegation. In addition, Plaintiffs fail to mention the alleged seizure of the jewelry in their response brief, and, therefore, appear to have abandoned this claim. *See Colin v. Fort Worth Indep. Sch. Dist.*, 2018 WL 4078272, at *3 (N.D. Tex. Aug. 27, 2018) (concluding that, by failing to respond to defendant's grounds for dismissal of the § 1983 claims asserted against him, plaintiffs

---

[8] The Individual City Defendants do not move for dismissal of Plaintiffs' supervisory liability claims against them based on failure to train and supervise. *See* Dkt. 33 ¶¶ 274-81. Accordingly, these claims remain pending against the Individual Defendants with regard to the seizure of Luisa.

both abandoned the claim and failed to meet their burden to negate defendant's qualified immunity defense). Accordingly, this claim should be dismissed.

### C.  Code Violation Claim

Plaintiffs allege that Code Enforcement Officers Lucas and Horn violated Plaintiffs' substantive due process rights under the Fourteenth Amendment by falsely charging them with a City code violation for the "accumulation of rubbish or garbage." Dkt. 65 at 13. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a cause of action under § 1983 for violation of the Due Process Clause, plaintiffs must show that they have asserted a recognized liberty or property interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994). The definition of "liberty" includes privileges expressly enumerated by the Bill of Rights and the fundamental rights implicit in the concept of ordered liberty. *Id.*

Plaintiffs fail to state a substantive due process violation because they have failed to explain how a City code violation for the accumulation of trash denied them a liberty or property interest. *See Nesmith v. Taylor*, 715 F.2d 194, 196 (5th Cir. 1983) (finding that allegedly malicious issuance of building code violation did not rise to the level constitutional violation). Accordingly, Plaintiffs' substantive due process right should be dismissed.

### D.  Section 1983 Conspiracy Claim

Plaintiffs allege that the Individual City Defendants conspired with Glidden and Kuhr "to remove Luisa out of her home and the neighborhood" in violation of § 1983. Dkt. 65 at 11. To support their conspiracy claim, Plaintiffs must allege facts showing (1) an agreement between the Individual City Defendants and Glidden and Kuhr to commit a deprivation of Plaintiffs'

constitutional rights, and (2) an actual deprivation of Plaintiffs' constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004); *Arsenaux v. Roberts*, 726 F.2d 1022, 1023-24 (5th Cir. 1982). "[M]ere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983." *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).

Plaintiffs have failed to allege any facts to support their conclusory allegations that the Individual City Defendants had an agreement with Glidden and Kuhr to deprive Plaintiffs of their constitutional rights. All of Plaintiffs' allegations are based on speculation. *See Jackson v. City of Hearne, Texas*, 959 F.3d 194, 205 (5th Cir. 2020) (holding that plaintiff's allegations based on speculation were not specific enough to establish conspiracy); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient."). The conspiracy claim against the Individual Defendants should be dismissed.[9]

## V.   City's Motion to Dismiss under Rule 12(b)(6)

### A.  Section 1983 Claim[10]

Plaintiffs allege that the City had "unwritten, unconstitutional customs that police officers enjoyed unconstitutionally unfettered and discretion" to violate Plaintiffs' rights by "abusing or

---

[9] For the same reasons, Plaintiffs' conspiracy claim against the City also should be dismissed.

[10] Because Plaintiffs' only remining claim against the Individual City Defendants is the § 573.001 Fourth Amendment claim, the Court addresses the City's liability only as to this claim. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding that there can be no municipal liability against a city under § 1983 if the plaintiff has suffered no constitutional injury at the hands of the individual police officer); *Cook v. Hopkins*, 795 F. App'x 906, 918 (5th Cir. 2019) ("[U]nder *Heller*, because we have found no constitutional violations on the part of the Individual Defendants, the City cannot be subjected to municipal liability."), *cert. denied*, 140 S. Ct. 2643 (2020).

disregarding" the requirements for detention under § 573.001. Plaintiffs further allege that the City failed to train, supervise, and discipline its police officers regarding the requirements for detention under § 573.001, constituting deliberate indifference to the deprivation of Plaintiffs' constitutional rights.

It is well-established that municipalities are not liable under § 1983 on the theory of *respondeat superior*. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To establish municipal liability under § 1983, a plaintiff must plead facts that plausibly establish (1) an official policy (2) promulgated by the municipal policymaker (3) that was the "moving force" behind the violation of the constitutional right. *Piotrowski*, 237 F.3d at 578.

An official policy can arise in various forms, including written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 579. A policy or custom is official only when it results from the decision or acquiescence of the municipal officer or body with "final policymaking authority" over the subject matter of the offending policy. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). "Finally, a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation." *Peterson*, 588 F.3d at 848. This means that "there must be a direct causal link" between the policy and the violation, not merely a "but for" coupling between cause and effect. *Id.*; *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

To sustain their claim against the City, therefore, Plaintiffs must plead facts plausibly establishing a policymaker, an official policy, and a violation of constitutional rights for which the moving force is the policy or custom. *Piotrowski*, 237 F.3d at 578. Plaintiffs need not offer proof of their allegations at this stage, but still must plead facts that plausibly support each element of § 1983 municipal liability. *See Iqbal*, 556 U.S. at 678.

Plaintiffs argue that the City had a widespread practice or custom in which police officers enjoyed "unconstitutionally unfettered discretion to . . . apprehend a person like Luisa without a warrant or consent, or by abusing emergency detention without probable cause." Dkt. 63 at 14. To proceed beyond the pleading stage, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). While Plaintiffs' Amended Complaint alleges specific facts about Luisa's seizure and her mental health evaluation, Plaintiffs fail to allege any facts that the City had a policy of unconstitutionally seizing individuals like Luisa without probable cause. *See* Dkt. 33 ¶ 282-83; Dkt. 63 at 14. "But plausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Pena*, 879 F.3d at 622 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Because Plaintiffs' pleadings contain only specific facts regarding the events giving rise to this lawsuit and none related to a City practice or custom, Plaintiffs have failed to allege a viable claim against the City that it had a custom of detaining individuals under § 573.001 without probable cause. *See Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020) (holding that arrestee failed to establish that county had official custom or policy requiring officers to use excessive force where arrestee's allegations merely described events giving rise to his lawsuit), *cert. denied*, --- S. Ct. ----, 2020 WL 5883401 (Oct. 5, 2020);

*Pena*, 879 F.3d at 622 (finding that plaintiff failed to allege sufficient facts to show policy where she alleged only specific facts regarding incident giving rise to her suit); *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (finding arrestee's conclusory allegation that police officer who effected arrest without probable cause "was acting in compliance with the municipality's customs, practices or procedures" insufficient to allege municipal liability).

Plaintiffs also allege that the City had a custom of inadequate training and supervision of its police officers regarding emergency detentions under § 573.001. To prevail on a failure to train theory, Plaintiffs must plead facts plausibly establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff*, 948 F.3d at 285.

Plaintiffs' pleadings contain no allegations regarding the City's existing training policies and do not identify an inadequate City training policy or procedure. Plaintiffs merely state in conclusory fashion that the City "failed to provide more or different training or supervising," and that "[t]his failure is evidenced by the multiple officers' conduct in the instant case." Dkt. 63 at 19. However, "[i]n order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010). Plaintiffs' Amended Complaint fail to meet these pleading requirements.

In addition, Plaintiffs fail to assert any facts showing that an inadequate training policy directly caused the alleged constitutional violations. In order to satisfy the third factor, Plaintiffs must make specific allegations showing that an inadequate training policy directly caused the alleged constitutional violations. *Ratliff*, 948 F.3d at 285. Instead, Plaintiffs simply state that "Plaintiffs'

constitutional rights . . . were directly and proximately caused by the actions and inactions of Defendant City of Austin." Dkt. 33 ¶ 283. "Absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)." *Ratliff*, 948 F.3d at 285. Accordingly, Plaintiffs have failed to allege a plausible failure to train claim against the City.[11]

Plaintiffs also assert that the City had inadequate disciplinary policies, which led to the alleged constitutional violations. Like an inadequate training claim, to prevail on an inadequate discipline claim, a plaintiff must prove that (1) the municipality's discipline policy was inadequate; (2) the discipline policy was a moving force in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its discipline policy. *King v. City of Austin, Texas*, No. A-16-CA-1020-SS, 2018 WL 2027748, at *9 (W.D. Tex. May 1, 2018). In support of their inadequate disciplinary claim, Plaintiffs state that the City failed to discipline police officers "who are aware of and conceal and/or aid and abet violations of the constitutional and/or statutory rights of citizens." Dkt. 33 ¶ 284. Plaintiffs allege no facts to support this speculative claim. Accordingly, Plaintiffs have failed to state a plausible inadequate disciplinary claim. Based on the foregoing, the City's Motion to Dismiss Plaintiffs' § 1983 claims should be granted.

**B.  Plaintiffs' ADA Claim**

Finally, Plaintiffs allege that the City discriminated against Luisa because of a perceived mental disability, in violation of Title II of the ADA, 42 U.S.C. § 12132. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to show a

---

[11] Because the Court finds that Plaintiffs have failed to meet the first and third factors, the Court need not address the deliberate indifference factor or the single-incident exception.

violation of the ADA, a plaintiff must allege that (1) she has a qualifying disability; (2) she is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of her disability. *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 690 (5th Cir. 2017).

The Court finds that Plaintiffs have stated sufficient facts to allege a violation of the ADA. Because the City acknowledges that the officers involved in Luisa's detention believed that she had a mental disability, Plaintiffs have satisfied the first factor. *See* Dkt. 67 at 1 ("The mere fact that the officers may have known that Luisa had a disability while they performed the emergency detention . . . ."). Regarding the second and third factors, Plaintiffs allege that the City discriminated against Luisa by detaining her and performing a mental evaluation against her will because of her perceived mental disability. Therefore, Plaintiffs have alleged a plausible claim under the ADA.

Relying on *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999), the City argues that Plaintiffs' ADA claim should be dismissed because it is based on the same factual allegations that support Plaintiffs' § 1983 claim. Because Plaintiffs assert their ADA claim against the City and not against the Individual Defendants in their individual capacities, the City's reliance on *Lollar* is misplaced. In *Lollar*, the Fifth Circuit held that a disabled state employee alleging discrimination could not bring a § 1983 action against her supervisor in the supervisor's individual capacity to enforce rights guaranteed under the Rehabilitation Act, 29 U.S.C. § 794, because the Rehabilitation Act, by its express terms, provides a comprehensive remedial scheme for the enforcement of its provisions. 196 F.3d at 608-10. The Fifth Circuit cited with approval the reasoning in cases from the Eighth and Eleventh Circuits, both of which held that the ADA's comprehensive remedial scheme bars § 1983 claims against state officials in their individual capacities. *See id.* at 610 (citing *Alsbrook*

*v. City of Maumelle*, 184 F.3d 999, 1010-11 (8th Cir. 1999), and *Holbrook v. City of Alpharetta*,

112 F.3d 1522, 1531 (11th Cir. 1997)). As the court explained in *Cole v. Velasquez*, 67 F. App'x

252, 2003 WL 21196164, at *2 n.11 (5th Cir. 2003) (per curiam):

> [O]ur reasoning in *Lollar v. Baker* may support the conclusion that Cole is precluded from bringing a § 1983 against Velasquez, in her *individual* capacity . . . . We have not had the occasion to decide the question of whether a prison inmate, such as Cole, can bring a § 1983 suit against a state prison official, such as Velasquez, in her *official* capacity in order to vindicate or enforce rights guaranteed to him by Title II of the ADA.

Accordingly, the City's Motion to Dismiss Plaintiffs' ADA claim should be denied.

### VI.    Order and Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court:

(1) **GRANT** Defendants' Rule 12(b)(1) Motion to Dismiss (Dkt. 44) as to Plaintiffs' Fourth

and Fourteenth Amendment claims related to the animal seizure warrant, the state court's animal

seizure order, and the state court proceedings for lack of subject matter jurisdiction, but **DENY**

the Motion with regard to all other claims;

(2) **GRANT** Defendant City of Austin's Rule 12(b)(6) Motion to Dismiss (Dkt. 45) as to

Plaintiffs' § 1983 claims, but **DENY** the Motion as to Plaintiffs' ADA claim; and

(3) **DENY** the Individually Named City Defendants' Rule 12(b)(6) Motion to Dismiss

(Dkt. 46) as to Plaintiffs' Fourth Amendment claim against Officers Von Seltmann, Reeves,

Hedrick and White related to Luisa Lupi's detention under the Texas Health and Safety Code

§ 573.001, but **GRANT** the Motion with regard to all other claims.[12]

---

[12] If the District Court adopts the undersigned recommendations, the following claims remain pending: Plaintiffs' ADA claim against the City; Fourth Amendment claim against Officers Von Seltmann, Reeves, Hedrick and White related to Luisa Lupi's detention under the Texas Health and Safety Code § 573.001; supervisory liability claims against Officers Floyd, Robinson, Von Seltmann, and King; and § 1983 conspiracy claim against Glidden and Kuhr.

The Court **DENIES** Plaintiffs' Motion to Compel Defendants Elizabeth Glidden and McKenna Kuhr to Comply with Federal Pleading Requirements (Dkt. 43).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

### VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 27, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE