# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **LUISA LUPI AND EVA LUPI,** *Plaintiffs* | § § § § | |
| v. | § § | Case No. 1:20-CV-207-RP |
| **TIMOTHY DIVEN, ET AL.,** *Defendants* | § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:** THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Elizabeth Glidden's Motion to Dismiss, filed March 12, 2021 (Dkt. 87), and Plaintiffs' Response, filed March 23, 2021 (Dkt. 88). On March 15, 2021, the District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.[1]

## I. Background

Plaintiffs Luisa Lupi and her sister Eva Lupi ("Plaintiffs") filed this civil rights lawsuit, pursuant to 42 U.S.C. § 1983, against the City of Austin (the "City"); Austin Police Department ("APD") Officers Timothy Diven, Jamie Von Seltmann, Michael Guetzke, Lauren Villarreal, Rocky Reeves, Jerry Floyd, Ewa Wegner, Alan Schwettmann, Joshua Visi, Michael King, and Brian Robinson; Austin Code Enforcement Department Officers Thomas Horn and Joseph Lucas;

---

[1] The pending Motion to Withdraw as Attorney of Record, filed June 21, 2021 (Dkt. 89), is not referred.

1

Austin-Travis County EMS Community Health Paramedic Program ("EMS") Officers Timothy Hedrick and Steve White;[2] and neighbors Elizabeth Glidden and McKenna Kuhr.[3] Plaintiffs allege that the City and the Individual City Defendants searched their property, seized their dogs and jewelry, and detained Luisa, in violation of their Fourth and Fourteenth Amendment rights and the Americans with Disabilities Act ("ADA"). Plaintiffs further allege that Glidden and Kuhr conspired with the other defendants to violate their constitutional rights.

Plaintiffs purchased their home at 6837 Auckland Drive in Austin, Texas in 2011. Plaintiffs allege that since then, they have "lawfully exercised their constitutional rights to own pets and quietly live with their pets on their property." Amended Complaint, Dkt. 33 ¶¶ 2, 50. Plaintiffs allege that Luisa has dyslexia and a mild speech impediment but does not have a mental illness or intellectual disability. *Id*. ¶ 12.

In September 2017, Defendant Glidden moved into the house next door to Plaintiffs. Plaintiffs allege Glidden soon began "willfully and intentionally harassing" Plaintiffs by "making false, denigrating statements" about Luisa to APD and Texas Adult Protective Services ("APS"). Specifically, Plaintiffs contend that Glidden told APD and APS that "Luisa was unable to care for herself because of her mental disabilities, and that she was intellectually challenged," and that Glidden reached over Plaintiffs' fence to spray their backyard with Roundup. *Id*. ¶ 74. Plaintiffs further allege that Glidden conspired with Kuhr, another neighborhood resident, "to remove Luisa from her property." *Id*. ¶ 76.

---

[2] Collectively, the APD, Code Enforcement, and EMS officers are referred to as the "Individual City Defendants."

[3] Plaintiffs' Original Complaint also named Travis County as a defendant. However, on March 26, 2020, the County was terminated, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Dkt. 25.

Plaintiffs allege that on March 30, 2018, Kuhr called APD to report that several of Plaintiffs' neighbors "had contacted her about concerns for Luisa, but they wished to remain anonymous." *Id*. ¶ 75. Plaintiffs allege that Kuhr told APD that Eva had moved back to California and abandoned Luisa. Plaintiffs further allege that Kuhr told APD that she had not seen Luisa's trash on the curb in months, she believed Luisa was living in unsanitary conditions and not eating properly, and she described "a foul odor coming from inside the house." *Id*.

In response to Kuhr's call, APD Officers Villarreal and Guetzke drove to Plaintiffs' house that same day to perform a "well-check" on Luisa. *Id*. ¶¶ 77-78. Villarreal stated in her police report that she "smelled a strong odor of urine when Luisa opened the door and observed Luisa to be extremely frail and thin with sunken cheeks and very thin hair." *Id*. ¶ 80. Villarreal also reported that "Luisa's clothing appeared too large for her and had a strong smell of being soiled, and her pants were covered in animal hair." *Id*. Villarreal further noted that she saw lice in Luisa's hair. *Id*. Immediately after the well-check, Villarreal contacted APS and was told that an APS officer would check on Luisa within 24 hours. *Id*. ¶ 86.

Villarreal also met with Glidden, who told Villareal that she "was concerned for Luisa and was planning to file a report with APS because she believed that no one was living with Luisa and she was unable to care for herself because of her disabilities." *Id*. ¶ 91. Glidden further told Villareal that she was concerned about the welfare of Luisa's dogs because one dog had a large sore on its face and another dog appeared to be "skin and bones." *Id*. After the meeting, Villarreal noted in her report that that would request a "Mental Health Unit follow-up" on Luisa. *Id*. ¶ 92.

Plaintiffs dispute Villarreal's report and Glidden's allegations about Luisa. Specifically, Plaintiffs contend that Luisa's clothing was clean and did not smell, and that she was wearing loose clothing at home to be comfortable. Dkt. 6 at 5. Concerning Luisa's weight, Plaintiffs state that

Luisa has always been slim and weighed a healthy 110 pounds. *Id*. Plaintiffs take special exception to Villarreal's observation that she could see lice in Luisa's hair, and contend that is "medically impossible" because "the detection of lice requires careful close-up work even by trained doctors, sometimes involving a microscope." *Id*. Plaintiffs also contend that they "went above and beyond to provide love and care for their pets." Dkt. 33 ¶ 61.

On April 6, 2018, APD's Crisis Intervention Team assigned Luisa's case to Officer Von Seltmann. After reviewing Officers Villarreal and Guetzke's reports and meeting with other officers involved in the case, Von Seltmann determined that Luisa's case should be reported to APS and APD's Crisis Intervention Team for a follow-up "because of Luisa's physical condition." *Id*. at ¶ 99. Von Seltmann coordinated with APS, APD's Animal Cruelty Unit, the Austin Code Enforcement Department, and EMS, and scheduled a follow-up mental health visit on Luisa for April 17, 2018. *Id*. ¶¶ 101-02.

Officers arrived at Luisa's home at 9 a.m. on April 17, 2018. *Id*. ¶ 111. After the officers knocked on her door, Luisa opened the door and stepped out onto her front porch. Officer Von Seltmann and Animal Cruelty Unit Officer Diven reported that Luisa was wearing clothes "that appeared to be soiled and too large for her slender frame," had issues with her speech, and "appeared to be mentally challenged." *Id*. ¶ 115. The officers also reported smelling urine and that they could "see lice on Luisa." *Id*. Diven also reported noticing "a strong order of ammonia, urine and feces emanating from behind the front door." *Id*. ¶ 113. The officers decided to detain Luisa for a mental evaluation under Texas Health and Safety Code § 573.001. Dkt. 6-2 at Ex. G.

Plaintiffs allege that the officers proceeded to search their home "without warrants or consent." Dkt. 33 ¶ 160. Diven described Plaintiffs' house "as a hoarder house," with "boxes and boxes of items and trash piled from floor to ceiling covering at least 80-90% of the space in the house."

Dkt. 6-2 at 15. He further stated that there was "dust, dirt and debris over everything." *Id*. Diven discovered Plaintiffs' four dogs inside the house and noted that they were missing large patches of fur and appeared to be in bad health, unkempt and very thin. *Id*. Based on the house's condition, the dogs' physical appearances, and "the horrific living conditions," Plaintiffs allege, Diven stated that he believed the dogs were "cruelly treated." Dkt. 33 ¶ 154. Accordingly, Diven seized the four dogs and stated that they were transported to the Austin Animal Center, "where they would be cared for." *Id*. In addition to their dogs, Plaintiffs allege that the officers took several pieces of antique jewelry worth $220,000. *Id*. ¶ 174.

While Plaintiffs allege that officers did not show Luisa a seizure warrant before seizing her or the four dogs, Plaintiffs' Amended Complaint acknowledges that Diven did obtain a Warrant for Seizure of Animals at 2:20 p.m. on April 17, 2018, and executed it at 3 p.m. the same day. *Id*. ¶¶ 179-80. Plaintiffs also acknowledge that Luisa was served with the Warrant and Notice of Hearing at 3:30 p.m. the same day, while still detained. *Id*. ¶ 182.

On April 24, 2018, Travis County Justice of the Peace Judge Nicholas Chu held a hearing pursuant to Texas Health and Safety Code §§ 821.022(b) and 821.023 "to determine ownership of the animals, whether the animals were cruelly treated . . . and to determine disposition of the [dogs]." Dkt. 26-1 at 2. After hearing the evidence, Judge Chu found that Luisa had "cruelly treated the animals . . . as defined by Tex. Health & Safety Code § 821.021, by torturing them and by unreasonably depriving the animals of necessary food, care and shelter." Dkt. 26-1 at 2. On Plaintiffs' appeal, Travis County Court at Law Visiting Judge David Phillips affirmed Judge Chu's Order divesting Plaintiffs' ownership of the dogs and turning them over to the Austin Animal Center. 26-2.

Plaintiffs filed suit on February 25, 2020 and filed their Amended Complaint on April 1, 2020. On December 16, 2020, the District Court granted the City's motion to dismiss Plaintiffs' Section 1983 conspiracy claim. Dkt. 79. Glidden now moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standards

### A.  Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Rule 12(c) Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). The standard for evaluating Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

### III. Analysis

Glidden argues that Plaintiffs have not sufficiently pled facts to support their conspiracy claim under Section 1983. Plaintiffs respond that Glidden's motion to dismiss is untimely and that their allegations are sufficient.

### A. Timeliness of Rule 12(b)(6) Motion

Plaintiffs argue that because Glidden failed to timely file her motion to dismiss to their Amended Complaint, the Court should strike her motion for failure to comply with Rule 12(a)(4)(A). Dkt. 88 at 5. Glidden, who is proceeding pro se, does not address the timeliness of her motion.

The Federal Rules of Civil Procedure require parties to file a motion to dismiss for failure to state a claim before their responsive pleading. FED. R. CIV. P. 12(b). However, courts will consider Rule 12(b)(6) motions filed after the answer if the movant has given notice by including in her answer the defense raised in the motion. *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999). When a Rule 12(b)(6) motion is filed after an answer, courts routinely treat it as a motion for judgment on the pleadings under Rule 12(c). *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Amaya v. City of San Antonio*, 980 F. Supp. 2d 771, 778 n.1 (W.D. Tex. 2013).

7

In her Answer to Plaintiffs' Original Complaint, Glidden asserts as an affirmative defense that Plaintiffs fail to state a claim on which relief can be granted.[4] Dkt. 20 at 2. Glidden filed her Rule 12(b)(6) motion on March 12, 2021, nearly a year after Plaintiffs filed their Amended Complaint on April 1, 2020. Although Glidden's motion to dismiss is untimely under Rule 12, Glidden provided notice in her Answer that she intended to challenge Plaintiffs' Complaint for failure to state a claim. Accordingly, the Court considers Glidden's untimely Rule 12(b)(6) motion under Rule 12(c). *Smith*, 2013 WL 12033215, at *4.

**B. Section 1983 Conspiracy Claim**

To state a claim for conspiracy under Section 1983, Plaintiffs must allege facts showing (1) an agreement between private and public defendants to commit an illegal act, and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). "[M]ere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of federal conspiracy under 42 U.S.C. § 1983." *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1023 (5th Cir. 1982)). Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under Section 1983. *See Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (upholding Rule 12(b)(6) dismissal because the complaint did not allege specific facts to show an agreement); *Arsenaux*, 726 F.2d at 1023-24 (finding that allegations of an agreement are conclusory absent "specific facts to show an agreement").

---

[4] Specifically, Glidden states that Plaintiffs fail to state a claim because: "Defendant has no knowledge of the whereabouts of the four dogs, nor had anything to do with the removal of the dogs. Defendant has no knowledge of the whereabouts of the antique jewelry or any other items allegedly taken from the Plaintiffs' home, nor had anything to do with alleged removal of items. Defendant has never entered nor seen the inside of the Plaintiffs' home." Dkt. 20 at 2.

Glidden contends that Plaintiffs provide only conclusory allegations to support their claim that she conspired with the Individual City Defendants to deprive Plaintiffs of their constitutional rights. Dkt. 87 at 3. In their Amended Complaint, Plaintiffs allege that Glidden

> willfully conspired with Defendant Officers and reached a meeting of minds to remove Luisa from her property and, in furtherance of the objective, acted in concert with Defendant Officers as their witness source[ ] by reporting false or misleading information about Luisa, Eva, or both, which resulted in violation of Plaintiffs' constitutional rights protected by the Fourth and Fourteenth Amendment.

Dkt. 33 ¶ 76.

Plaintiffs do not allege facts showing that Glidden had an agreement with the Individual City Defendants to commit an illegal act; rather, their allegations are based on speculation and not tied to any alleged facts. *See Jackson v. City of Hearne, Texas*, 959 F.3d 194, 205 (5th Cir. 2020) (holding that plaintiff's conclusory allegations based on speculation were not specific enough to establish conspiracy); *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (stating that plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts on which their claim is based because "[b]ald allegations that a conspiracy existed" are insufficient).

Plaintiffs have failed to allege facts showing any agreement between Glidden and the Individual City Defendants to support the first element of their conspiracy claim. Because the Court finds that Plaintiffs have not pled facts to support the existence of an agreement, the Court need not decide whether Plaintiffs have alleged facts to show a constitutional deprivation. Accordingly, the Court recommends that Plaintiffs' claim against Glidden be dismissed because Plaintiffs have failed to state a claim for conspiracy under Section 1983.

## IV. Recommendation

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant Elizabeth Glidden's Motion to Dismiss (Dkt. 87), construed as a Motion for Judgment on the Pleadings under Rule 12(c), and dismiss all claims against Defendant Glidden.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on July 7, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE